DOUGLAS G. GRAY, INCOMPETENT, BY AND THROUGH HIS NEXT FRIEND, JANET A. GRAY, HIS WIFE, APPELLANT, v. STATE OF NEBRASKA, APPELLEE.

290 N. W. 2d 651

Filed April 1, 1980. No. 42739.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, for appellant.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Douglas L. Gray, an incompetent, by and through his wife and next friend, Janet A. Gray, has appealed an order entered by the Nebraska Workmen's Compensation Court which, on rehearing, dismissed his petition for workmen's compensation benefits. We affirm.

The facts giving rise to this action are not in dispute. Douglas L. Gray (Gray) was employed in Omaha, Nebraska, by the State of Nebraska Department of Labor (State) on August 26, 1977. Gray took 4 hours of annual or vacation leave that afternoon for the purpose of purchasing supplies and helping to prepare for a planned zone meeting of the International Association of Personnel in Employment Security (IAPES) to be held at Norfolk, Nebraska, that same evening. IAPES is an organization of persons engaged in community services in the areas of employment security and employment insurance. The organization, as far as is pertinent to this appeal, includes four zones within the State of Nebraska. Each zone is required to have two meetings per year; however, other meetings may be called by the zone chairman or at the request of one-third of the zone members. It does not appear that the meeting to which Gray was traveling was one of the two required meetings. Furthermore, the meeting was characterized by one of the planners as primarily a social event, although it appears there was also a business meeting scheduled for that evening.

Gray and a companion, who also took vacation leave for the afternoon of August 26, 1977, began the trip to the zone meeting. The vehicle they were using developed mechanical problems. While wait-

ing for repairs to be made, the parties consumed an undetermined amount of alcoholic beverages. After the vehicle was repaired, the parties continued the journey, leaving the Omaha area at approximately 4:30 p.m. According to witnesses following the vehicle as it approached the Norfolk area, the vehicle was driven in an erratic manner, crossing the center line of the two-lane highway on several occasions. Shortly thereafter, the vehicle left the traveled portion of the highway and rolled over completely at least once. Gray was found about 60 feet away from the vehicle and his companion was found about 4 feet from the vehicle. It is not definitely known who was operating the vehicle at the time of the accident, but evidence in the record indicates that Gray had been riding as a passenger. Gray sustained a head injury and remained comatose for approximately 3 weeks following the accident. Since that time, his rehabilitation has been rather slow due to what was described by doctors as severe organic brain damage. There is little chance that he will ever be employable in the future.

This action was initiated by Janet A. Gray in the Nebraska Workmen's Compensation Court to recover benefits for her husband's injuries. The State's answer contended that Gray's injuries did not arise out of and in the course of his employment and that Gray was intoxicated at the time of the accident. The Nebraska Workmen's Compensation Court dismissed the petition after finding that the State did not derive a substantial, direct benefit from Gray's attendance at the zone meeting. On rehearing before a three-judge panel of that court, the order of dismissal was affirmed. The panel found that the State did not receive a direct or substantial benefit from Gray's participation in the meeting. One judge dissented on the ground that attendance at IAPES functions was contemplated as an incident of employment and therefore the State derived a

substantial, direct benefit from the activity. Gray has appealed to this court contending that, on rehearing, the Nebraska Workmen's Compensation Court committed reversible error. We therefore turn our attention to those assigned errors.

Gray contends, first, that it was error to find the IAPES meeting to be primarily, if not wholly, for recreational and social purposes. The rule is well established that findings of fact made by the Nebraska Workmen's Compensation Court after rehearing have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong and that in testing the sufficiency of evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party. See, Keith v. School Dist. No. 1, *ante* p. 631, 289 N. W. 2d 196 (1980); Scamperino v. Federal Envelope Co., *ante* p. 508, 288 N. W. 2d 477 (1980); Newbanks v. Foursome Package & Bar, Inc., 201 Neb. 818, 272 N. W. 2d 372 (1978); Hyatt v. Kay Windsor, Inc., 198 Neb. 580, 254 N. W. 2d 92 (1977). From our examination of the evidence herein we cannot conclude that the Nebraska Workmen's Compensation Court was clearly wrong in its finding.

The majority of that court found that the meeting was "a primarily social activity," a finding with which the dissenting judge agreed. While it is true that the planners had scheduled a business meeting of Zone I, IAPES, it is likewise true that the meeting was primarily social in nature, as was indicated by the testimony of one of the planners of the meeting. We do not believe that this finding was clearly wrong and therefore reject Gray's claim to the contrary.

Gray next contends that it was error to conclude that the injury did not arise out of and in the course of his employment. Specifically, he contends that the Nebraska Workmen's Compensation Court erroneously limited its review by considering the as-

pects of the zone meeting by itself instead of considering the IAPES organization as a whole in determining whether the State derived a direct and substantial benefit from Gray's activities. Although the dissenting judge accepted that position in his opinion on rehearing, he urged a liberal construction of the law, with which we cannot agree. In a workmen's compensation case, the claimant must establish that the injury for which compensation is sought arose out of and in the course of the employment. § 48-101, R. R. S. 1943. The term "in the course of" refers to the time, place, and circumstances of the accident. See, Mauser v. Douglas & Lomason Co., 192 Neb. 421, 222 N. W. 2d 119 (1974); Reis v. Douglas County Hospital, 193 Neb. 542, 227 N. W. 2d 879 (1975). "The course of employment requirement tests work-connection as to time, place and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 Larson, Workmen's Compensation Law, § 14.00 (1978). We therefore must focus on the activity which gave rise to the injury for which compensation is claimed and examine that activity by itself to determine whether compensation may be allowed. The majority of the Nebraska Workmen's Compensation Court was correct, on rehearing, in examining only the activity which gave rise to the injury and not examining the overall character of the organization in making its determination of the compensability of the injury.

Attendance at the Zone I, IAPES, meeting was the activity which gave rise to the injury for which compensation was claimed. The Nebraska Workmen's Compensation Court, on rehearing, found that such meeting was primarily social in nature. We have earlier stated that cases related to social and recreational activities often raise matters difficult to resolve. See, Kuethe v. State, 191 Neb. 167, 214 N. W.

2d 380 (1974); Adler v. Jerryco Motors, Inc., 187 Neb. 757, 193 N. W. 2d 757 (1972). The tests to be applied in such cases are stated in 1A Larson, Workmen's Compensation Law, § 22.00 (1978), as follows: "Recreational or social activities are within the course of employment when (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

The determination of whether an activity falls within one of the aforementioned three tests is a factual determination to be made by the finder of fact. While it is true that no specific finding was made with reference to the first test, it is likewise true that Gray could not recover under this proposition as the injury unquestionably did not occur on the premises of the employer. As to the latter two tests, the Nebraska Workmen's Compensation Court found on rehearing that Gray attended the IAPES zone meeting without any encouragement or request, express or implied, on the part of the State, and further found that the State did not benefit either directly or substantially from Gray's participation therein.

Such findings cannot be set aside on appeal to this court unless clearly wrong. See, Keith v. School District No. 1, *supra*; Scamperino v. Federal Envelope Co., *supra*. Evidence was adduced at the hearing on this matter which could support the findings made by the Nebraska Workmen's Compensation Court on rehearing.

It is to be noted that the third test as set forth in

1A Larson, Workmen's Compensation, *supra,* and adopted by this State in Kuethe v. State, *supra,* employs the term "substantial, direct benefit." Black's Law Dictionary (5th Ed., 1979) defines "substantial," in part, as: "Of real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable." That same authority defines the word "direct," in part, as: "Immediate; proximate; by the shortest course; without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of *indirect.*" The term "benefit" is defined there, in part, as: "Advantage; profit; fruit; privilege; gain; interest." We conclude from the evidence in the record that the benefit, if any, to the State of Nebraska was neither substantial nor direct. The evidence indicates that attendance at zone meetings of IAPES served primarily a social function which resulted in little, if any, benefit to the State. Neither administrative leave nor expenses are granted by the department for attendance at IAPES *zone* meetings. Furthermore, testimony adduced from officials of the Nebraska Department of Labor indicated that membership in IAPES was neither expressly nor impliedly required.

Considering the scope and standard of review of this matter on appeal to this court, as we must, we conclude that the judgment of the Nebraska Workmen's Compensation Court on rehearing was correct and that its action in dismissing Gray's petition for compensation benefits was correct, and must be affirmed.

AFFIRMED.

CLINTON, J., not voting.