LILLIE B. MEYER, APPELLANT AND CROSS-APPELLEE, V. FIRST UNITED METHODIST CHURCH, APPELLEE AND CROSS-APPELLANT.

294 N. W. 2d 611

Filed July 1, 1980. No. 42897.

Thomas E. Ferneau, for appellant.

Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

BRODKEY, J.

Lillie B. Meyer has appealed an order entered by the Nebraska Workmen's Compensation Court on re-

hearing which dismissed her petition for workmen's compensation benefits. We affirm.

The facts giving rise to this action are undisputed. On July 9, 1977, Lillie B. Meyer was employed as a "local pastor" by the Cornhusker Circuit of the United Methodist Church, a group of churches in Nebraska consisting of the Atlanta, Bertrand, Loomis, and Mascot-Bethel churches. A local pastor is a lay person who has a license to preach and who must meet certain educational requirements established by the General Conference of the United Methodist Church, the national governing body. The General Conference determines the rules and regulations which govern the actions of the churches, conferences, districts, bishops, and directors of ministry, as well as the qualifications and requirements for the various types of pastors within the United Methodist Church. Pursuant to those rules, Meyer was attending a 4-week-long continuing education course for local pastors which was conducted at the St. Paul School of Theology in Kansas City, Missouri, and which educational requirement was known to the Cornhusker Circuit at the time they engaged Mrs. Meyer. Although Mrs. Meyer received her usual salary and was granted a leave of absence during her attendance at the school, neither the school nor the named defendant contributed financing for her tuition, books, or board while attending the school.

The educational emphasis was such that students at the school were required to reside in dormitories located on campus during the term of the continuing education course, including weekends. Furthermore, all matriculated students were generally required to eat their meals in the school's dining halls from Monday until Saturday noon. During those periods when the school's meal facilities were closed, the students were permitted to obtain their food off campus. However, in addition, Mrs. Meyer had requested and received a special dispensation

from the school to eat in her dormitory room because of a diabetic condition from which she suffered. On Saturday, July 9, 1977, since the dining room was to close at noon, Mrs. Meyer left the St. Paul campus to purchase her food for the weekend. While on her way to the grocery store, she started to cross a street with the light in her favor, when an automobile struck her. Initially, Mrs. Meyer felt no pain, but within a few hours her back commenced to ache. It was determined that she had suffered a back injury, necessitating medical care and, eventually, corrective surgery. She thereafter filed a petition in the Nebraska Workmen's Compensation Court to recover compensation for the aforementioned injuries which she alleged arose out of and in the course of her employment.

After a hearing before a single judge of the Nebraska Workmen's Compensation Court, that court dismissed her petition, finding that the named defendant, First United Methodist Church, Inc., of Bertrand, neither required Mrs. Meyer to attend the school nor paid any of her expenses while she was in attendance. It found the injury Mrs. Meyer sustained did not occur within the scope and course of her employment. On rehearing before a three-judge panel of the court, the order of dismissal was affirmed. The panel found that, since the named defendant had neither paid for nor required Mrs. Meyer's attendance at the school for the course of study, she was in pursuit of a personal goal at the time of her injury, and it did not occur in the course of her employment.

Furthermore, the court found that Mrs. Meyer undertook the course of study in order to comply with the mandate, not of her employer, but of the Conference; and that she needed to undertake it in order to remain certified as a local pastor. The court specifically stated: "[P]laintiff's obligation to continue her education arose out of her status as a

local pastor and not out of her services to the defendant or to any particular church. Accordingly, the primary beneficiary of her continued education was, of course, herself and the Conference as a whole."

One of the judges dissented on the ground that the distribution of authority in the United Methodist Church, while of doctrinal significance, was immaterial to this dispute and, therefore, the actions of both the General Conference and the Cornhusker Circuit, as well as the named defendant, First United Methodist Church, Inc., of Bertrand, were, in fact, the actions of her employer. He found that Mrs. Meyer's attendance at continuing education courses was at the request of her employer and made Mrs. Meyer a better trained and educated pastor; hence, her employer received a direct benefit from her attendance and her injury was one which arose out of and in the course of her employment.

Mrs. Meyer has appealed to this court, contending that, on rehearing, the Nebraska Workmen's Compensation Court committed reversible error. Mrs. Meyer's first, and principal, contention is that the Nebraska Workmen's Compensation Court was in error in holding that she was not within the scope and course of her employment at the time of her injury. In *Gray v. State,* 205 Neb. 853, 857, 290 N.W.2d 651, 653 (1980), we stated the rule as follows:

In a workmen's compensation case, the claimant must establish that the injury for which compensation is sought arose out of and in the course of the employment. § 48-101, R. R. S. 1943. The term "in the course of" refers to the time, place, and circumstances of the accident. See, Mauser v. Douglas & Lomason Co., 192 Neb. 421, 222 N. W. 2d 119 (1974); Reis v. Douglas County Hospital, 193 Neb. 542, 227 N. W. 2d 879 (1975). "The course of employment require-

ment tests work-connection as to time, place and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 Larson, Workmen's Compensation Law, § 14.00 (1978). We therefore must focus on the activity which gave rise to the injury for which compensation is claimed and examine that activity by itself to determine whether compensation may be allowed.

Larson states, with reference to education and training programs for employees:

When an employee, by undertaking educational or training programs, enhances his own proficiency in his work, he does in a sense benefit his employer. On the other hand, self-improvement is primarily the employee's own concern; obviously the ambitious clerk who is burning the midnight oil to become an accountant cannot expect workmen's compensation if his lamp blows up. In some situations, however, it may be found that, either by the contemplation of the contract or by custom, the educational activity is part of the employment.

1A Larson, The Law of Workmen's Compensation § 27.31(a) (1979).

While not involving fact situations identical to those involved in the instant case, the following cases are instructive and helpful in resolving the issues in this case and we are persuaded by their reasoning. In *Chamberlain v. Camillus Jr. High School,* 53 A.D.2d 732, 384 N.Y.S.2d 40 (1976), the court had before it a case involving a school teacher who was injured in an automobile accident as he was returning to his home from the state university where he was taking a course to meet requirements imposed

by the state education department for permanent certification of school teachers. In affirming the decision of the Workmen's Compensation Board denying compensation, the court stated: "An examination of the record reveals that the employer exercised no control over claimant's studies, which he was pursuing for his own personal benefit so that he could be permanently certified. Such being the case, compensation was properly disallowed [citation omitted]." *Id.* at 733, 384 N.Y.S. 2d at 41.

In *McQuerrey v. St. John Mfg. Co. and Liberty Ins. Co.,* 240 Mo. App. 720, 216 S.W.2d 534 (1948), the court had before it the situation where an association of which the employer was a member entered into an apprenticeship agreement with the union which required classroom instruction before an apprentice would become a journeyman cabinetmaker-millman. The joint apprenticeship committee of the union and the employer association made an arrangement with the board of education of Kansas City for the claimant to attend a course in vocational training at a local high school two evenings each week between 7 p.m. and 9 p.m., which classes were conducted under the supervision of the board of education. Claimant was injured during his training and recovered compensation from his employer. In reversing the award of compensation, the court stated:

> We are of the opinion the employer in this case was not required to furnish claimant with the *classroom* work referred to. That was a requirement or condition imposed on every apprentice by the Association and the Union, before he could become a Journeyman Cabinet Maker-Millman. Such outside instruction was for the benefit of the apprentice and not for any particular employer. The parties themselves recognize the distinction to be made between *working* for and *training* under the direction of an

employer and that of *classroom instruction.* These were treated as separate items or duties in all the written instruments defining the relationship. The time spent on each project was recorded under separate headings. We do not agree with claimant's contention that, at the time of his injury, he was at a place he was required to be by his employer. The contract of employment obligated the employer to provide *employment* and *training opportunities.* We think these obligations refer to the time spent and the work done in the employer's plant and while the apprentice is under the control and guidance of the designated foreman "in the shop", and not to the time and place of classroom instruction.

*Id.* at 725, 216 S.W.2d at 537 (emphasis in original). See, also, *Hammond v. Keim,* 128 Neb. 310, 258 N.W. 478 (1935).

In the instant matter, the Nebraska Workmen's Compensation Court found that the injury arose during the course of an activity which the Cornhusker Circuit, Mrs. Meyer's employer, neither required nor had authority to require. It is now a well-established rule that findings of fact made by the Nebraska Workmen's Compensation Court after rehearing have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong and that, in testing the sufficiency of evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party. See, *Keith v. School District No. 1,* 205 Neb. 631, 289 N.W.2d 196 (1980); *Scamperino v. Federal Envelope Co.,* 205 Neb. 508, 288 N.W.2d 477 (1980); *Newbanks v. Foursome Package & Bar, Inc.,* 201 Neb. 818, 272 N.W.2d 372 (1978). From our review of the record, we conclude that the Nebraska Workmen's Compensation Court was correct in finding that the Cornhusker Cir-

cuit did not make the attendance at continuing education courses a condition of employment, although it was cognizant of the requirement of further education for local pastors and Mrs. Meyer's intention to take the courses. The principal impetus for her taking the course was to comply with the mandate of the General Conference. The record indicates, moreover, that it is primarily to the local pastor's benefit to complete such courses as, upon completion of sufficient courses, the local pastor becomes an ordained minister and receives a salary increase due to increased status within the church. While the increase in education does benefit the employer in an indirect manner, it is apparent from the record that the activity was not a part of the contract of employment. That being so, it follows that any injury resulting therefrom was not within the course and scope of the employment relationship. We conclude that the Workmen's Compensation Court was correct in dismissing Mrs. Meyer's claim.

In view of this determination, we need not examine the other errors assigned by Mrs. Meyer. The First United Methodist Church has filed a cross-appeal herein contending that the Nebraska Workmen's Compensation Court erred on rehearing by failing to make certain fact findings.

In *Sarraillon v. Stevenson,* 153 Neb. 182, 43 N.W.2d 509 (1950), we stated the rule to be that, in the absence of an express finding by the District Court on an issue adverse to the appellee, a cross-appeal in reference to such issue may not be had in this court.

In this case, the Nebraska Workmen's Compensation Court did not make findings or decide the issues raised in First United Methodist Church's cross-appeal and the claim of error set forth in its cross-appeal is without merit. We affirm the judgment of the Workmen's Compensation Court.

AFFIRMED.

KRIVOSHA, C.J., concurs in result.